UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AXIS INSURANCE COMPANY,<br>    as subrogee of RSU # 9<br>        Plaintiff,<br><br>    v.<br><br>MARK C. HALL,<br>        Defendant. | )<br>)<br>)<br>)<br>)  1:12-cv-00166-JAW<br>)<br>)<br>) |

**ORDER ON MOTION TO DISMISS**

In this subrogation action, an insurance company filed a complaint against a contractor for property damage to a school. The insurance company paid the school district $253,716.78 for the loss and seeks to recover that amount from the contractor; the school district allegedly sustained an additional uninsured loss of $5,000.00. The contractor moves to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join the school district under Rule 19. The contractor claims that the school district is a necessary and indispensable party, and contends that the school district cannot be joined because doing so would destroy the Court's diversity jurisdiction. Reviewing the specific facts in this case and applying pragmatic considerations, the Court agrees with the contractor that the school district is a necessary and indispensable party under Rule 19 and dismisses the lawsuit without prejudice to allow the insurer to proceed in state court.

**I.    STATEMENT OF FACTS**

    **A.    Procedural History**

On May 21, 2012, Axis Insurance Company (Axis), as subrogee of RSU # 9, filed suit in this Court against Mark C. Hall. *Compl.* (ECF No. 1). Mr. Hall moved to dismiss the Complaint on July 19, 2012, for failure to join a necessary party under Federal Rule of Civil Procedure 12(b)(7). *Def.'s Mot. to Dismiss* (ECF No. 5) (*Def.'s Mot.*). Axis responded on August 7, 2012. *Pl. Axis Ins. Co.'s Opp'n to Def.'s Mot. to Dismiss* (ECF No. 7) (*Pl.'s Opp'n*). Mr. Hall replied on August 21, 2012. *Def.'s Reply in Support of Mot. to Dismiss* (ECF No. 8) (*Def.'s Reply*).

### B.   The Allegations in the Complaint

Axis alleges that it is an insurance company organized and existing under the laws of the state of Illinois with a usual place of business in Chicago, Illinois, and that Mark C. Hall is a resident of Portland, Maine. *Compl.* ¶¶ 1, 3. Axis says it insured RSU # 9's property in Farmington, Maine, namely Mount Blue High School, and claims that as a result of Mr. Hall's negligent work as a subcontractor at the high school, Axis was required to reimburse RSU # 9 for property damage. *Id.* ¶¶ 2, 10-11. Axis asserts federal diversity jurisdiction under 28 U.S.C. § 1332. *Id.* ¶ 5.

## II.   THE PARTIES' POSITIONS

### A.   Mr. Hall's Motion

Mr. Hall maintains that RSU # 9—as a subrogor with a deductible—is a necessary and indispensable party whose joinder would destroy the Court's diversity jurisdiction because RSU # 9 is a Maine school district and Mr. Hall a Maine resident. *Def.'s Mot.* at 1-2, 4-9. Mr. Hall says that Axis claims that the total loss amount was $258,716.78, but that Axis paid RSU # 9 $253,716.78 (the total loss

amount minus a $5,000 deductible) and is pursuing only the subrogated loss amount in this proceeding, leaving RSU # 9 with an unasserted $5,000 claim. *Id.* at 2.

    **B.**    **Axis's Opposition**

Axis disagrees that RSU # 9 is a necessary and indispensable party under Rule 19(a). *Pl.'s Opp'n* at 3-7. Axis reads *United States v. Aetna Casualty & Surety Company*, 338 U.S. 366 (1949), as holding that an insured is "clearly not" an indispensable party where the insurer is only partially subrogated to the insured's rights. *Pl.'s Opp'n* at 4. Axis applies a four-factor test for determining indispensability and concludes that RSU # 9 is not an indispensable party under that test. *Id.* at 4-7.

    **C.**    **Mr. Hall's Reply**

Mr. Hall argues that Axis's interpretation of *Aetna* fails to acknowledge that the case held that in partial subrogation cases, both the subrogor and subrogee are necessary parties. *Def.'s Reply* at 1-2. Mr. Hall points out that Rule 19 has been amended since *Aetna* was decided in 1949 and asserts that the amendments to the Rule "made it clear that Rule 19(b) determinations must be based on pragmatic considerations." *Id.* at 2. Applying those considerations, Mr. Hall contends that the Court should dismiss the lawsuit and allow Axis to proceed in state court. *Id.* at 2-3.

**III.**    **DISCUSSION**

    **A.**    **Legal Framework**

3

        **1.**      **Rules 12(b)(7) and 19**

"Where a party required under Rule 19 has not been joined, a party may move for dismissal under Rule 12(b)(7)." *Cabrera-Morales v. UBS Trust Co.*, 769 F. Supp. 2d 67, 70 (D.P.R. 2011). In *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010), the First Circuit explained the purpose of Rule 19 and provided instruction on how to apply the Rule:

> Rule 19 is designed to protect the interests of parties who are not yet involved in ongoing litigation. To measure how critical those interests are, the rule instructs courts to engage in a two-part analysis. Parties should be joined, when feasible, if they are "necessary" to the action according to the criteria laid out in Rule 19(a). If a necessary party cannot be joined in the action without divesting the court of subject-matter jurisdiction, Rule 19(b) lays out additional criteria for determining whether the party is "indispensable." If the court finds that party is anything less than indispensable, the case proceeds without her. If, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

*Id.* at 25 (internal citation omitted).

The *Jimenez* Court expanded upon the meaning of "necessary" under Rule 19:

> The term 'necessary' is a vestige of a superseded version of Rule 19 and no longer appears in the text. . . . Lest there be any confusion, the word is used as a term of art and signifies desirability rather than actual necessity. Parties are not truly necessary in the vernacular sense of the word unless and until they satisfy the terms of Rule 19(b).

*Id.* at 25 n.3 (internal punctuation omitted).

The term "indispensable" has similarly been removed from the text of Rule 19, but courts still use it as shorthand for whether dismissal under Rule 19(b) is warranted. The "critical question" under Rule 19(b)—and thus the key to whether a party is "indispensable"—is "'whether in equity and good conscience' the action may proceed in [the party's] absence." *B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc.*,

4

516 F.3d 18, 23 (1st Cir. 2008) (quoting FED. R. CIV. P. 19(b)).  Rule 19(b) provides four non-exhaustive factors for the trial court to consider in determining whether a party is indispensable:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

FED. R. CIV. P. 19(b) (quoted by *Jimenez*, 597 F.3d at 25).  The First Circuit has stressed that "Rule 19(b) determinations must be based on fact-specific considerations," and "must be steeped in 'pragmatic considerations.'" *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 635 (1st Cir. 1989) (quoting Advisory Committee Notes on the 1966 Amendments to Rule 19).

### 2. Matters Outside the Pleadings

In deciding a motion to dismiss under Rule 12(b)(7), a court is "not limited to the pleadings" and may consider "other relevant extra-pleading evidence."  5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1359, at 68 (3d ed. 2004) (WRIGHT & MILLER); *see also OneBeacon*, 2009 U.S. Dist. LEXIS 117402 at *2.  Here, the parties agree on the authenticity and accuracy of the Notice of Claim attached to Mr. Hall's Motion to Dismiss, *Def.'s Mot.* at 3-4, *Pl.'s Opp'n* at 2, and the Court has considered it.

### 3. Burden of Persuasion

Finally, "the burden is on the party moving under Rule 12(b)(7) to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence." 5C WRIGHT & MILLER § 1359, at 67 (3d ed. 2004); *see also Advanced Cardiology Ctr. Corp. v. Rodriguez*, 675 F. Supp. 2d 245, 250 (D.P.R. 2009) ("Although the First Circuit has yet to explicitly state who carries the burden on a Rule 12(b)(7) motion, those courts of appeals that have addressed the issue all lay the burden upon the defendant"); *One and Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, Civ. No. 09-cv-642-B-H, 2010 U.S. Dist. LEXIS 112405, *34 (D. Me. Oct. 19, 2010) (citing *OneBeacon Am. Ins. Co. v. Elwell*, Civ. No. 09-342-P-H, 2009 U.S. Dist. LEXIS 117402, *4 (D. Me. Dec. 13, 2009)).

### B. Whether RSU # 9 Is a "Necessary" Party Under Rule 19(a)

In *Aetna*, the Supreme Court concluded that an insured party with a deductible is a necessary, but not indispensable party. *Aetna*, 338 U.S. at 382 ("Both are 'necessary' parties"), 382 n.19 ("They are clearly not 'indispensable' parties under the familiar test . . . that such parties have an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience"). Under *Aetna*, RSU # 9 would be a necessary party under Rule 19(a). Applying the First Circuit's definition of "necessary" in *Jimenez*—which turns on "desirability rather than actual

necessity"—the Court readily arrives at the same conclusion. It would be desirable to have RSU # 9's retained interest litigated at the same time as Axis's subrogated interest, to promote judicial efficiency and to minimize the possibility of prejudice to RSU # 9 and the risk to Mr. Hall of inconsistent judgments and duplicative litigation. *See* FED. R. CIV. P. 19(a)(1)(B).

### C. Feasibility and Diversity Jurisdiction

Given that RSU # 9 is a necessary party, Rule 19(a) requires that RSU # 9 be joined if feasible; that is, unless RSU # 9 is outside of the Court's jurisdiction. *See* Rule 19(a)(1). Mr. Hall's Motion to Dismiss assumes that joining RSU # 9 is not feasible because joinder would destroy this Court's diversity jurisdiction. He is correct. "The district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States . . ." 28 U.S.C. § 1332(a). It is well established that for a case to fit within this section, there must be "complete" diversity. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Diversity is not complete if any plaintiff is a citizen of the same state as any defendant. *Id.* at 373-74. Here, joining RSU # 9 as a plaintiff would destroy the Court's jurisdiction because RSU # 9 and Mr. Hall are citizens of Maine.

### D. Whether RSU # 9 Is an "Indispensable" Party Under Rule 19(b)

The question shifts to whether RSU # 9 is indispensable—that is, "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). Even though *Aetna* suggests that

RSU # 9 would not be an indispensable party, as a federal district court recently observed in *State Farm Fire and Casualty Co. v. Electrolux Home Products, Inc.*, No. 11 C 8946, 2012 U.S. Dist. LEXIS 53090 (N.D. Ill. Apr. 16, 2012), *Aetna* has been superseded:

> Rule 19(b) underwent a substantial revision in 1966, making *Aetna* persuasive but not necessarily controlling. Now, Rule 19(b) requires a pragmatic case-by-case assessment of whether the deductible-paying insured's absences require dismissal. Relevant factors include whether the deductible-paying insured or the existing parties would be prejudiced by a judgment in the absence of the insured, whether that prejudice could be lessened in any way, whether a judgment without the insured would be adequate, and whether the [insurer] plaintiffs would have an adequate remedy if this action were dismissed.

*Id.* at *6-7 (citing FED. R. CIV. P. 19(b)). Thus, although the parties draw different conclusions from *Aetna*, the Court does not view *Aetna* as dispositive. Instead, the Court turns to the factors set forth in Rule 19(b) to make the fact-specific and pragmatic determinations the current Rule requires.

    1.  The Four Rule 19(b) Factors

      a.  **Prejudice**

The first Rule 19(b) factor is the extent to which a judgment rendered without RSU # 9 might prejudice an existing party or RSU # 9. FED. R. CIV. P. 19(b)(1). Mr. Hall argues that if this lawsuit is allowed to proceed without RSU # 9, he "is still subject to a risk of a subsequent lawsuit being brought in state court by RSU # 9 to recover its deductible." *Def.'s Mot.* at 7. He contends that the negligence allegation in this case is complicated and he anticipates that the defense of the lawsuit will be expensive; he objects, therefore, to the prospect of having to defend

8

the same lawsuit twice. *Id.* He also worries about the prospect of inconsistent federal and state judgments. *Id.* Finally, he maintains that RSU # 9 could be prejudiced because "a judgment in this matter could have an adverse effect on any subsequent action it may choose to bring." *Id.* at 8. In response, Axis dismisses Mr. Hall's concerns and relies on *Aetna*. *Pl.'s Opp'n* at 5 ("In *Aetna*, the United States Supreme Court considered the same argument and rejected it").

Evaluating the facts in this case, the Court concludes that, if the lawsuit were to proceed without RSU # 9, the possibility of prejudice against the parties or RSU # 9 slightly favors dismissal. If the lawsuit proceeds in this Court and Mr. Hall is unsuccessful in his defense, it is true that Mr. Hall could face a lawsuit from RSU # 9 in state court, but it is also true that he might be precluded from re-litigating in state court what he lost in federal court. *See Lalumiere v. Miller*, 1998 ME 274, ¶ 7, 722 A.2d 46, 47 ("We have permitted the offensive use of collateral estoppel . . . on a case-by-case basis") (internal punctuation omitted); *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 771 (1st Cir. 2010) (discussing non-mutual offensive collateral estoppel). Conversely, if Mr. Hall successfully defends the federal lawsuit, a second lawsuit in state court is conceivable, but highly unlikely based on a number of practical considerations. First, the total value of RSU # 9's uninsured claim is only $5,000.00 and the allegations in the Complaint appear to raise questions of causation, construction standards, and other sophisticated matters that would cost more than $5,000.00 to litigate. Moreover, RSU # 9 would be suing Mr. Hall in the shadow of an unsuccessful action brought by Axis, which

had over $250,000.00 at stake and a financial incentive to fully litigate the claim. The facts in this case make the possibility of a second, fully-litigated lawsuit in state court and the threat of a second inconsistent verdict more theoretical than real.

The prejudice to Axis Insurance if the Court grants Mr. Hall's motion would be that it would have to reinstitute this lawsuit in state court and would be deprived of its chosen forum, a forum Axis has fought to remain in. However, there is no suggestion that Axis would be prevented from initiating a state court action due to a lack of state court jurisdiction or a statute of limitations issue. *See Pl.'s Opp'n* at 6 ("The defendant states, correctly, that Axis could have filed this action in state court, and could do so if this action were dismissed . . . ."). There is also no suggestion that the state courts would be unable to proficiently address this construction law case.[1]

The Court is also concerned that by insisting on a federal forum and leaving its insured to go it alone in a state forum, Axis may not be complying with its obligation "to act in good faith and deal fairly with its insured." *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me. 1993). "[A]n insurer's duty of good faith derives from a covenant implicit in the provisions of the insurance contract." *Chapman v. Std. Fire Ins. Co.,* No. 1:11-cv-459-DBH, 2012 U.S. Dist. LEXIS 119687, *9 (D. Me. Aug. 23, 2012) (internal punctuation omitted). RSU # 9 seems palpably

---

[1] Moreover, a potential advantage to Axis of suing in state court is that, unlike the federal rules, the Maine civil rules allow Axis to initiate its state claim in the name of its insured, RSU # 9. *See* ME. R. CIV. P. 17(a). Jurors might be more predisposed to favor a school district than an insurance company as the named plaintiff. However, the Court assumes that Axis is aware of this provision and still prefers federal court.

better off tagging along with Axis's lawsuit as a party and having its $5,000 deductible resolved at the same time Axis resolves its claim against Hall.  Yet, Axis is silent as to how its choice of a federal forum would benefit its insured as opposed to itself.

A similar analysis applies to RSU # 9.  RSU # 9 could not proceed in this Court without destroying the Court's diversity-based jurisdiction and could not, therefore, act during this litigation to protect its uninsured interest in the outcome. By contrast, if the case were litigated in state court, RSU # 9 could join the lawsuit without affecting state court jurisdiction.  Moreover, there is an efficiency advantage in simultaneously addressing both RSU # 9's uninsured interest of $5,000.00 and Axis's payment of $253,716.78.  At the same time, so long as it did not sleep too long, there would be some advantage to RSU # 9 in sitting by and awaiting the resolution of the federal action before deciding whether to file suit in state court.  Certainly, if Axis were to lose in federal court, this would discourage RSU # 9 from suing.  However, even if Axis were successful in its federal court lawsuit, Mr. Hall could still use the expense of a state action by RSU # 9 to leverage a lower settlement with the knowledge that attorney's fees would quickly reduce RSU # 9's net return.

From the Court's perspective, the facts in this case and pragmatic considerations favor dismissal.

     **b.**  **Protective Provisions**

Neither party has suggested any protective provisions that the Court might entertain to minimize the impact of RSU # 9's absence from this case. *Def.'s Mot.* at 8; *Pl.'s Opp'n* at 5-6; *Def.'s Reply* at 3. This factor weighs slightly in favor of dismissal.

### c.     Adequacy of Judgment in RSU # 9's Absence

The Court discussed this factor in its analysis of potential prejudice to the parties. A judgment in this Court would be fully adequate as between Axis and Mr. Hall. Mr. Hall worries about having to defend a lawsuit filed by RSU # 9, but the Court notes that RSU # 9's potential claim appears to be limited to $5,000.00, making it highly unlikely that RSU # 9 would find litigation worthwhile, particularly if Mr. Hall prevailed here. Moreover, Mr. Hall would have already completed much of the work required to defend a lawsuit by RSU # 9 in defending the pending lawsuit. This factor somewhat favors allowing the action to proceed in this Court.

### d.     Adequacy of Remedy if Action Dismissed

Mr. Hall contended in his Motion that Axis "can re-file its complaint, joining RSU # 9 as party plaintiff, in Maine Superior Court." *Def.'s Mot.* at 8. In its response, Axis acknowledged that it could have filed this claim in state court. *Pl.'s Opp'n* at 6. But it argued it should not be forced to do so. *Id.* Mr. Hall replied that the "claim is still well within the limitations period and trial by jury is available to Axis in state court." *Def.'s Reply* at 3.

The availability of an adequate state forum militates in favor of dismissal. As noted earlier, the attractiveness of the state forum to Axis should be enhanced by the availability of Maine Civil Rule of Procedure 17(a), which permits an insurer who has paid part of a loss to sue in the name of the insured. ME. R. CIV. P. 17(a). This rule has no federal counterpart. 2 CHARLES HARVEY, MAINE CIVIL PRACTICE § 17:6 (3d ed. 2011) (HARVEY). If the case were re-initiated in state court, Axis could elect to sue in the name of RSU # 9, notify RSU # 9 to that effect, and if RSU # 9 wished to assert a claim arising out of the same transaction or occurrence, it could simply notify Axis of its intention to do so. ME. R. CIV. P. 17(c). This procedure would have the advantage of resolving whether RSU # 9 wished to tag along with Axis to collect its $5,000.00 deductible. Also, if Mr. Hall wished to join RSU # 9 in state court, he could do so. *See* 2 HARVEY § 17:2 ("The defendant is entitled to protection against multiple actions for the same claim, so he may compel joinder in the cases of partial assignment or subrogation").

As authors Wright, Miller, and Kane observe, Federal Rule of Civil Procedure 17(a), which addresses real party in interest, deals with the issue of partial subrogation by allowing the defendant to implead the absent party:

> An insurer who pays a part of the loss is only partially subrogated to the rights of the insured. . . . The respective rights of the party in this situation parallel those when there has been a partial assignment. Either the insured or the insurer may sue. Thus, if the insured brings suit, the insurer who is partially subrogated may intervene in the action to protect its pro rata share of the potential recovery. If either sues and the other does not voluntarily join or intervene, defendant may seek protection from multiple lawsuits by having the absent party joined.

6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1546, at 507-09 (3d ed. 2010). *See State Farm Mut. Liab. Ins. Co. v. United States*, 172 F.2d 737, 739 (1st Cir. 1949) (a partial subrogee is a real party in interest under Rule 17(a) and therefore has standing to sue in his own name, "subject only to the right of the defendant, by making timely objection, to insist upon the joinder of the other parties in interest in order to avoid a split-up of the cause of action"); *Gannett v. Pettegrew*, 224 F.R.D. 293, 294 (D. Me. 2004); *Agri-Mark, Inc. v. Niro, Inc.*, 190 F.R.D. 293, 296 (D. Mass. 2000) ("It appears relatively well settled that an insurer who has paid part of a loss suffered by its insured and has been at least partially subrogated to the insured's right has substantive rights against a tort feaser qualifying it as a real party in interest"). To allow Axis to proceed against Mr. Hall in federal court would effectively preclude Mr. Hall from impleading RSU # 9 as Rule 17(a) contemplates.[2]

## 2. Other Caselaw

According to authors Wright, Miller, and Kane, there is no general rule as to whether a court will dismiss a federal court action when an insurer initiates an action against an alleged wrongdoer when the insurer has paid only a portion of the total loss. 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1619, at 295 (3d ed. 2001). Some courts

---

[2] Finally, the Supreme Court has suggested that if there is an adequate state forum, the timing of the motion to dismiss can be significant. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116 (1968) (noting that by the time the case reached the court of appeals following a trial, the "problematic preference on efficiency grounds had entirely disappeared"). To the extent this factor is relevant to this action, Mr. Hall brought the motion to dismiss at an early stage in this litigation, a factor that slightly favors his position because the efficiency of a state forum has not been compromised by extensive litigation in this Court.

emphasize the threat of inconsistent verdicts and multiplicity of suits, and conclude that the insured is indispensable; others note that the insured should be joined if feasible but conclude the insured is not indispensable for resolution of the lawsuit between the insurer and the wrongdoer.  *Id.* at 295-96.  This lack of unanimity among the courts reflects compliance with the directive that the decision be fact-specific and pragmatic.

Not surprisingly, in view of the fact-specific and pragmatic nature of the issue, both Mr. Hall and Axis are able to point to court decisions that support their respective positions.  Mr. Hall cites *Universal Underwriters Ins. Co. v. Tony DePaul & Sons, Inc.*, No. 01-0631, 2001 U.S. Dist. LEXIS 15864 (E.D. Pa. Jul. 25, 2001), a case that involved a situation somewhat similar to the instant case: a federal subrogation lawsuit by the insurer of a property owner against a contractor who allegedly caused a building to collapse, where inclusion of the insured as a party to reflect his uninsured interest would destroy diversity-based jurisdiction.  *Id.* at *2-4.  In *Universal Underwriters*, a federal district court in Pennsylvania dismissed the insurer's complaint without prejudice to allow it to proceed in state court.  *Id.* at *8.  The *Universal Underwriters* Court concluded that the insured was both a necessary and indispensable party, focusing on the impact of a judgment in federal court on the rights of the insured, the inability of the district court to shape an appropriate judgment, the inadequacy of a federal judgment to cover the claims of an absent party, the adequacy of the state court remedy, and the early timing of the motion to dismiss.  *Id.* at *7-8.  Although *Universal Underwriters* is helpful, the major

distinction between this case and *Universal Underwriters* is that the deductible in *Universal Underwriters* was $90,000.00, making it more likely that the insured would independently pursue the matter in state court.

In response, Axis relies on *State Farm Fire and Casualty Co. v. Electrolux Home Products*, No. 11 C 8946, 2012 U.S. Dist. LEXIS 53090 (N.D. Ill. Apr. 16, 2012), in which a district court denied a motion to dismiss in a similar case. In *Electrolux*, three insurance companies filed a federal lawsuit against a dryer manufacturer, alleging that they paid insurance proceeds totaling over $12 million to more than 200 insured people in 33 states for property damage caused by defective dryers that the defendant manufactured. *Id.* at *1-2. Noting that there was no indication in that case that the roughly 200 insureds planned to collect their deductibles, which ranged from $100 to $3,000, the district court declined to dismiss the case, observing that "[a] finding of indispensability based on the existence of an insured's cause of action, with no indication that the right will be exercised, would result in a *per se* rule that all insured must be joined in an action brought by partially subrogated insurance companies, contrary to the case-by-case analysis demanded by Rule 19(b)." *Id.* at *11-12.

The absence of any suggestion that RSU # 9 is interested in pursuing its $5,000 deductible gives the Court some pause. At the same time, the Court is reluctant to read too much into RSU # 9's silence. The record does not reveal whether RSU # 9 is even aware of this subrogation action and the Court has already

16

discussed the legal and practical reasons that RSU # 9 cannot join this federal suit and is unlikely to initiate its own state suit.

The *Electrolux* Court weighed a significant federal claim in excess of $12 million by three insurers against the prospect of a proliferation of state-based lawsuits by 200 potential insureds with relatively minimal deductions. The *Electrolux* Court reasonably concluded that the small, unasserted deductibles should not control the insurers' chosen forum for their multi-million dollar claims. Here, unlike *Electrolux*, there is only one insured and it would be surprising if RSU # 9 declined to participate in Axis's state court lawsuit, especially if Axis decided to sue in its name under Maine Rule 17(c).

On balance, the Court concludes that the conclusions of other courts depend upon their specific facts, including the amount of the deductibles, the number of insureds, the amount of money at stake for each, the stage of the litigation, the adequacy of the state forum, the availability of the state forum, the likelihood of a separate lawsuit, the comparative efficiency of maintaining federal jurisdiction against proceeding in state court, and the nature of the controversy. Although these other cases offer some assistance in resolving the pending motion, the Court resolves the motion on the facts presented in this case.

### E.  Summary

Like many fact-intensive inquiries, the case for dismissal here is not unalloyed. Axis selected a federal forum and some pragmatic considerations favor resolution in federal court. Furthermore, there is no per se rule for dismissal in

these circumstances. However, on balance, the Court has concluded that Mr. Hall has the better argument. While the Rule 19(b) factors, such as potential prejudice, the risk of conflicting judgments, and the prospect of litigation in two forums, point in different directions, the bottom line is that there is no good reason not to resolve RSU # 9's deductible claim at the same time as Axis's subrogation claim and the only forum where the slightly separate interests of Axis and its insured may be litigated together is the state forum. The prejudice to Axis from filing in state court is slight and the prejudice to its insured from remaining in federal court is significant. The Court therefore resolves the motion in favor of state court jurisdiction.

## IV.  CONCLUSION

The Court GRANTS Mark C. Hall's Motion to Dismiss (ECF No. 5) and DISMISSES Axis Insurance Company's Complaint (ECF No. 1) without prejudice.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 21st day of November, 2012